GIMBEL BROS. INC., Plaintiff, *v.* SAMUEL STEINMAN et al., Defendants.

Municipal Court of the City of New York, Borough of Manhattan, August 6, 1952.

*Max Shenghit* for plaintiff.

*Herman Phillips* for Samuel Steinman, defendant.

STARKE, J. This action is against a husband to recover for necessaries purchased by his wife.

The following questions of law are presented:

(1) Has a storekeeper sustained the burden of proving the wife's purchases to be "necessaries" where there is credible evidence to show that some of these items were for use in a rooming house business personally owned by the wife?

(2) Where husband and wife are living together, does the husband have the burden of proof as to whether he provided her with necessaries? What is the effect of a notice to the storekeeper not to charge the husband or a direction to close the account?

(3) What is the effect when the couple are living apart? Who has the burden of proof as to whether the husband suitably provided for the wife, when they are living apart?

(4) Is abandonment of the husband by the wife without just cause and without his consent a complete defense to liability for the wife's purchases of necessaries made after such abandonment? Who has the burden of proof on this issue?

It is conceded that the couple were living apart at the time of the purchases; that all the purchases were made by the wife and were for her own use; that they were either taken by her personally or delivered to her at a different address than her marital home; and that none of the goods were for the husband's use or any other members of the immediate family.

From the evidence adduced, the court makes the following findings of fact:

The couple were married in 1947 and lived together in their marital home in Somerville, New Jersey. The account with the plaintiff was solely in the name of the husband, and the address was listed as " Somerville, New Jersey " on the plaintiff's account statements, invoices and books. The husband had a charge plate and the wife had a separate charge plate on the husband's account. She thus had express authority to charge the account. About two months before Christmas, 1948, the husband gave her the sum of $2,500, at her request, to purchase a rooming house business on 86th Street in New York City, as a sideline activity in order to keep her mind occupied. Shortly before Christmas, 1948, the wife left the marital home.

It should be noted here that the wife did not testify at this trial, and that the husband made a very creditable witness. About January 10, 1949, he wrote a letter to the plaintiff stating that he would no longer be responsible for her debts. This letter was acknowledged by the plaintiff by letter dated January 19, 1949 and was addressed to " Mrs. Samuel Steinman, Box #1, Somerville, New Jersey ". This letter stated that it was imperative that she return the charge plate because of the husband's notification, that she must make no future charges to the account, and that the store would be pleased to open an account in her own name based on her personal credit rating. The letter, however, was received by the husband instead of the wife, since the wife was no longer living with him at the above-mentioned address (the marital home), and was introduced into evidence by the husband. The husband testified that he did not close the account, and that he made no effort to get back the charge plate from her because he had hopes that she would return to live with him.

Soon thereafter the husband was taken to a hospital in Bound Brook, New Jersey, where he remained several months. In the spring of 1949, she visited him at the hospital and, upon his plea to return to him, she gave him assurance she would do so as soon as he got out of the hospital. After his discharge from the hospital, he returned home and found that not only

was his wife not there, but that the house was empty and barren of household belongings, the wife having cleaned the house out of everything while he was in the hospital. He also testified that he never saw her since the visit in the hospital.

Several months later she commenced making the purchases involved here. The purchases were made between November 1, 1949, and January 25, 1950. The husband admitted that he did not give her any money or provide her with necessaries ever since the day she left him in December, 1948. He further testified that she commenced an annulment action against him in New York in December, 1950, which he did not defend; that the annulment was granted and that she has since remarried.

As to Question No. 1, the burden of establishing that a particular article is a necessary is on the party so claiming (41 C. J. S., Husband and Wife, § 57); "necessaries" are those items and supplies which are needed for her maintenance and existence, and her personal use, suitable to her condition in life (*Patino* v. *Patino,* 195 Misc. 887; *Taylor* v. *Brown,* 195 Misc. 840).

This court holds that the plaintiff has sustained the burden of proving the following items as "necessaries": the gloves, nightgowns, pajamas, shoes, shirts and hat. The court on its own motion reopened this case to receive evidence on the question of whether these particular purchases were ladies' items, and the court is satisfied that they were "necessaries". Defendant's contention, that plaintiff has not established that the defendant's wife is the same Mrs. Samuel Steinman who made the purchases, must fall. It is reasonable to conclude that she is the same individual since she had the charge plate in her possession, was obliged to identify herself or had to sign for the merchandise, and her signature was verified.

However, the plaintiff has not established by a fair preponderance of credible evidence that the remaining items consisting of lamps, spread and blanket robe, were "necessaries". It appears that these items were not for her *personal* use but were for the rooming house business which she owned personally. They do not fall into the category of "necessaries".

As to Question No. 2, the general proposition of law is that "By reason of the marriage relation there is imposed on the husband the duty to support and maintain his wife in conformity with his condition and station in life" (*Garlock* v. *Garlock,* 279 N. Y. 337, 340; *Keller* v. *Phillips,* 39 N. Y. 351, 354); that obligation is a continuing one (*Hatch* v. *Leonard,* 165 N. Y. 435); and does not cease merely by agreement to live

separately in the absence of any agreement or arrangement that such obligation shall cease (*Rochester Gen. Hosp.* v. *Ingstrum,* 171 Misc. 288).

Where husband and wife are living *together,* the burden is on the husband to show in defense to an action seeking to hold him liable for his wife's purchases that he had fully performed his duty to furnish her with necessaries, since she has an implied authority to charge the credit of her husband with necessaries (*B. Altman & Co.* v. *Durland,* 185 App. Div. 114; *Wickstrom* v. *Peck,* 163 App. Div. 608).

A notice in the newspapers or even a direct notice to a storekeeper, admittedly received, not to charge the husband with his wife's purchases does not ordinarily relieve the husband of his liability to provide her with necessaries (*Keller* v. *Phillips, supra; B. Altman & Co.* v. *Durland, supra; Bloomingdale Bros.* v. *Benjamin,* 200 Misc. 1108; 41 C. J. S., Husband and Wife, § 55); nor would an order or direction by the husband to the store to close the account relieve him of that liability. The rule is the same whether they are living together or apart. The test is not whether he gave the notice or the direction. The test is whether they are living apart, and if they are, the notice or direction may serve a useful purpose, which will be discussed later herein.

Where the husband and wife are living together and the storekeeper sells goods to the wife on her husband's account, after receiving notice not to do so and being informed by the husband that he is providing her with necessaries, the storekeeper assumes a risk in selling and must be prepared to take the burden of proving the following, in order to recover:

(1) either a subsequent promise by him to pay, or that the goods sold were ''necessaries '', and

(2) that the husband failed to provide her with those necessaries or with sufficient funds to purchase them. (*B. Altman & Co.* v. *Durland, supra; Keller* v. *Phillips, supra; Klopfer* v. *Mittenthal,* 117 N. Y. S. 93.)

As to Question No. 3, where husband and wife are living *apart,* while neither the notice not to extend credit nor the order to close the account relieves him of his liability for necessaries, such notice or order officially puts the storekeeper on notice that the couple may be living apart, in which event the burden of proof is transferred to the storekeeper. Where the husband and wife are living *apart,* the storekeeper has the burden of proving that the purchases were necessaries and that the husband did not suitably provide for the wife (*Constable* v. *Rosener,*

82 App. Div. 155, 158; *Taylor* v. *Brown, supra; Farquharson* v. *Brokaw,* 67 Misc. 277, affd. 142 App. Div. 898); in such a case, the storekeeper supplies her with necessaries at his own risk (*Wanamaker* v. *Weaver,* 176 N. Y. 75).

As to Question No. 4, a husband is not liable for support of his wife nor for necessaries furnished his wife, where they are living separate and apart *through no fault of his* (*B. Altman & Co.* v. *Durland, supra; Constable* v. *Rosener, supra; Wolf* v. *Schulman,* 45 Misc. 418); or where she " in a legal sense *aban-doned* him " (*Matter of Roessler,* 171 Misc. 306, 308, italics supplied; *Manufacturers Trust Co.* v. *Gray,* 278 N. Y. 380). So long as such a condition continues, the husband's obligation to support her becomes dormant (*Rochester Gen. Hosp.* v. *Ing-strum, supra*). She cannot call upon him to perform his obli-gation in this regard (*Mirizio* v. *Mirizio,* 242 N. Y. 74) and her implied agency to procure necessary support at his expense is nonexistent (*Constable* v. *Rosener, supra*). A stranger fur-nishing such necessaries may not hold him liable therefor (*Rochester Gen. Hosp.* v. *Ingstrum, supra*).

While the wife's right to support from the husband is zeal-ously guarded in law, the husband is only required to support the wife elsewhere than at his home when he has given her cause to leave him (*Winburn* v. *Winburn,* 200 App. Div. 26). " A wife who leaves a home which the husband has provided without just cause and who thereby refuses to fulfil her portion of the marriage agreement cannot compel her husband to sup-port her " (*Mirizio* v. *Mirizio, supra; Rochester Gen. Hosp.* v. *Ingstrum, supra,* p. 289; *Matter of Roessler, supra*). The husband's duty to properly maintain and support his wife is conditioned upon her being ready and willing to perform the duties she owes to her husband, to live with him and make a home for him (*Sturm* v. *Sturm,* 80 Misc. 277). In *Constable* v. *Rosener* (82 App. Div. 155, 161, *supra*) the court said: " It has never been held, so far as I know, that a wife could volun-tarily and without cause leave her husband, repudiating her obligations that she incurred upon her marriage, and then compel the husband to support her separated from him."

As to the burden of proof, where the storekeeper seeks to impose liability upon the husband for necessaries furnished the wife and the husband and wife are living apart, it appears that the burden is on the storekeeper to show that the separa-tion was without fault on the part of the wife, that she departed from some cause that would justify her absence, that she had not gone away of her own accord (*Constable* v. *Rosener,*

*supra*), that she did not leave her husband against his will and without justifiable cause (*Catlin* v. *Martin*, 69 N. Y. 393), and that the separation was due to the husband's fault (*Wolf* v. *Schulman, supra; Steisel* v. *Gratzer*, 66 N. Y. S. 2d 526).

To constitute " abandonment " there must be a departure of the spouse from the marital home without justification and without consent of the other spouse (*Matter of Mooney*, 86 N. Y. S. 2d 485; *Matter of Barc*, 177 Misc. 578). If a person leaves the abode occupied by both parties to the marital relationship without cause or reason or justification, that in law would be actual abandonment (*Zlotnick* v. *Zlotnick*, 91 N. Y. S. 2d 445).

By the weight of the credible evidence, this court finds:

(1) While the husband was not relieved of liability for the wife's necessaries by reason of the notice admittedly received by the storekeeper, the burden of proving that the husband did not suitably provide for the wife shifted to the storekeeper by reason of the fact that the couple were living apart at the time the purchases were made, and the storekeeper was officially put on notice thereof;

(2) That the storekeeper sustained the burden of proof on this point since the husband admitted that he gave her no money since the day she left him and did not after that provide her with any funds whatsoever;

(3) That there was, however, an abandonment of the husband by the wife without just cause and without his consent, and that the plaintiff has not sustained the burden of proving that the separation was due to the husband's fault;

(4) That the abandonment here is a complete defense to liability for the wife's purchases of necessaries made after the abandonment, and that the husband is therefore not liable for the remaining items found to be necessaries by this court.

Accordingly, judgment is hereby rendered on the law and the facts in favor of the defendant, Samuel Steinman, dismissing the complaint as to him on the merits, without prejudice to the plaintiff bringing an action against the other defendant, Mary Steinman, who was not served in this action, and as to whom the action was severed.